# IN THE SUPREME COURT OF IOWA

No. 49 / 05-0146

Filed May 25, 2007

**WILLIAM HANNAN**,

Appellant,

vs.

**STATE OF IOWA**,

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Dubuque County, Monica L. Ackley, Judge.

Further review from a decision by the court of appeals affirming a district court's judgment denying the defendant postconviction relief. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED.**

Kent A. Simmons, Davenport, for appellant.

Thomas J. Miller, Attorney General, and Sheryl A. Soich, Assistant Attorney General, for appellee.

**CADY, Justice.**

In this case we must decide whether a defendant's right to counsel under our state and federal constitutions was violated and if counsel's failure to vindicate those rights resulted in ineffective assistance of counsel. We agree with the defendant that his right to counsel was violated and that his counsel rendered ineffective assistance in failing to assert his rights.

## I. Background Facts and Proceedings.

William Hannan was charged with second-degree sexual abuse in violation of Iowa Code section 709.3 (1995). The charge followed his arrest for an incident involving his live-in girlfriend on December 12, 1996. An assistant public defender was appointed by the district court to represent Hannan. Within a week, Hannan made a request for substitute counsel which was eventually granted.

Hannan then moved to continue his trial to permit substitute counsel additional time to prepare for the trial. The court continued the trial. As the new trial date approached, Hannan again moved for substitution of counsel. He indicated, among other things, he did not have confidence in his attorney's ability or motivation, and that he had major differences in opinion with his attorney on how to handle his case. The district court granted the motion. It found Hannan established "good cause for withdrawal." The court appointed a third court-appointed attorney.

Because the trial date was just over a month away, substitute counsel moved to continue the trial so he could prepare Hannan's defense. The court set the matter for a hearing. Before the hearing, Hannan moved for another substitution of counsel and the matter was set for hearing.

At the conclusion of the hearing, the following exchange took place:

> THE COURT I'm going to move the case once more. I'm going to appoint Denis Faber. If you can't keep Mr. Faber, you represent yourself. It is that simple. If you want to be your

own attorney, come in and tell us so.  It is like a doctor.  If you want a doctor to do surgery on your lungs and he won't go in through your feet, so you want another doctor.  It is probable you won't find an attorney to do the things you want to do, so odds are you will have to do them yourself from that table, representing yourself.  This is your last opportunity to have an attorney to represent you.  You better stick with him.  If you don't, if you try to get rid of him or push him where he has to get out on ethical grounds, you will be here all by yourself and have to be your own lawyer, Mr. Hannan.  That's it.

(To the Court Reporter)  "Order, State versus Hannan.  Three attorneys have now withdrawn from representation of Mr. Hannan.  Because Mr. Harmon's withdrawal is based on an ethical ground, the Court grants it.

The Court has advised Mr. Hannan in court that the Court will appoint one more attorney for him and this is the last attorney.  He must either get along with this attorney and not seek to have him do anything the attorney claims will violate the code of ethics or he will end up trying this case pro se and represent himself.

It is now ordered that Attorney Denis Faber is appointed to represent the Defendant at public expense. . . ."

Now, you have gotten Denis Faber.  He is your attorney.

. . . .

He is it. From now on, you keep him or you represent yourself.

THE DEFENDANT:  Well, I'm just trying to defend myself, Your Honor.

THE COURT:  I know it and that is how you will do it.  You will defend yourself if you don't keep this lawyer.

The trial was continued for another month.

Five days before this new trial date, Faber filed a motion to continue the trial to a later date.  In his motion, Faber admitted that he was only appointed over a month earlier and that he had not had time to review the file or even meet with the defendant.  The district court held a hearing on Faber's motion, granted the motion, and continued trial to February 1998.

Prior to trial, Hannan learned that Faber had never tried a criminal case, and never tried any case before a jury.  Because Faber was "concerned that Defendant's right to a fair trial is compromised by this circumstance," Faber made a motion to appoint co-counsel.  Before the motion was ruled on, Hannan told Faber he no longer wanted his representation and would

prefer to represent himself. As a result, Faber filed a motion for leave to withdraw on December 30, 1997. The district court held a hearing on these motions in January. At this hearing, the following exchange took place:

> THE COURT: The motion [for leave to withdraw] provides that the Defendant advised Mr. Faber that he, the Defendant, no longer wishes Mr. Faber to represent him and would prefer to represent himself. Is that true, Mr. Hannan?
> THE DEFENDANT: Yes, sir.
> THE COURT: And that's yet your feeling today?
> THE DEFENDANT: Yeah, I don't have the money to afford the 6, 7, $8000 the attorneys want.
> THE COURT: This is your fourth attorney.
> THE DEFENDANT: Right.
> THE COURT: And we had a long discussion, and my last order said that four was all we had for you, that was all we'd give you, that would prove to us satisfactorily there isn't any attorney here that is going to be able to do what you want them to do.
> THE DEFENDANT: I'm not happy with court-appointed attorneys.
> THE COURT: Huh?
> THE DEFENDANT: I'm not satisfied with court-appointed attorneys.
> THE COURT: So you're either going to hire one or represent yourself?
> THE DEFENDANT: That's correct.
> THE COURT: Okay. That being the case, Mr. Faber, I'm going to grant your motion for leave to withdraw as counsel in the case.

After this exchange the court explained to Faber that it was going to reappoint him to "sit at counsel table during the trial." The court then further explained what it expected of Faber as stand-by counsel.

Hannan then asked several questions of the court concerning his self-representation. He inquired about filing documents, jury selection, lesser included offenses, motions and witnesses, expenses, plea bargaining, and the possible verdicts that could be rendered. In response, the court also gave Hannan a brief overview of the trial procedures.

Following the hearing, the court sustained the motion to withdraw and overruled the motion to appoint co-counsel. The order made it clear

that Hannan was proceeding pro se, and that Faber was "to serve strictly as a resource to the Defendant in terms of answering Defendant's questions."

Trial commenced with Hannan representing himself. Faber was present as stand-by counsel. At Hannan's request, Faber conducted jury selection and freely participated in arguing Hannan's pretrial motions. Hannan gave the opening and closing statements, and examined all witnesses.

The jury found Hannan guilty of second-degree sexual abuse. He was sentenced to serve a term of imprisonment not to exceed twenty-five years. Pursuant to section 902.12, Hannan was required to serve at least eighty-five percent of his sentence.

Hannan filed a pro se motion for new trial and a pro se motion in arrest of judgment. Both motions were based on a typographical error in the verdict form and evidence excluded at trial. These motions were denied, and Hannan appealed. The same claims in support of the posttrial motions were raised as error on appeal.

Faber continued to represent Hannan on appeal. The court of appeals affirmed the judgment and sentence. It held the district court did not abuse its discretion in excluding certain items of evidence, and the error in the verdict form did not prejudice the defendant.

Hannan filed a pro se application for postconviction relief (PCR). One of the reasons advanced in his application was an "Improper waiver of right to counsel," in which Hannan stated there was "no record of where the defendant had knowingly, intelligently, and voluntarily waived his rights, to proceed pro se." The PCR court appointed an attorney to represent Hannan. The attorney filed an amended application in April of 2003. The amended application did not assert an improper waiver of counsel due to procedural errors, although it did assert claims of ineffective assistance of

trial and appellate counsel. The claims of ineffective assistance of counsel, however, did not assert counsel was ineffective for failing to argue that an improper waiver of counsel occurred. The PCR court eventually denied Hannan relief, finding he had not shown how Faber had failed in performing an essential duty.

Hannan appealed the decision of the PCR court and retained Kent Simmons to represent him. Simmons included the improper waiver of counsel as a ground for his ineffective-assistance-of-counsel claim, and moved for a limited remand to develop the issue. We denied the motion, but granted his request to expand the record on appeal to include the original trial proceedings. The court of appeals affirmed the decision of the PCR court without a decision under Iowa Rule of Appellate Procedure 6.24(1), (4). Hannan then petitioned this court for rehearing. We granted Hannan's petition for further review.

**II. Issues.**

"On further review, we can review any or all of the issues raised on appeal or limit our review to just those issues brought to our attention by the application for further review." *Anderson v. State,* 692 N.W.2d 360, 363 (Iowa 2005). In his application for further review, Hannan argues his trial, appellate, and postconviction counsel were ineffective in failing to challenge the adequacy of the defendant's waiver of counsel. He also argues his trial, appellate, and postconviction counsel were ineffective in failing to challenge the denial of his request to reinstate counsel. Finally, Hannan argues his trial, appellate, and postconviction counsel were ineffective in failing to challenge the ineffective assistance of the defendant's stand-by counsel at his original criminal trial. We choose to address Hannan's first argument.

### III. Standard of Review and Applicable Law.

We review claims of ineffective assistance of counsel de novo. *State v. Williams*, 574 N.W.2d 293, 300 (Iowa 1998). "To prove ineffective assistance of counsel, the appellant must show that (1) counsel failed to perform an essential duty, and (2) prejudice resulted." *State v. Lane*, 726 N.W.2d 371, 393 (Iowa 2007). There is a presumption the attorney acted competently, and prejudice will not be found unless there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Hopkins*, 576 N.W.2d 374, 378 (Iowa 1998).

### IV. Preservation of Error.

The State argues Hannan failed to preserve error because Iowa Code section 814.7 (2005) does not apply in this case, and Hannan failed to meet the requirements to preserve error in existence prior to the enactment of section 814.7.[1] Section 814.7 allows a defendant to raise ineffective-assistance-of-counsel claims for the first time in PCR proceedings. Iowa Code § 814.7 ("The [ineffective assistance of counsel] claim need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes."); *see State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006) (explaining section 814.7); *State v. Tate*, 710 N.W.2d 237, 239–40 (Iowa 2006) (same). The section went into effect on July 1, 2004.

---

[1]The State does not challenge preservation of error based on the failure of Hannan to submit the waiver of counsel issue to the district court at the postconviction relief hearing as a ground for his claim of ineffective assistance of counsel. The issue was raised for the first time on PCR appeal, but we took a pragmatic approach by permitting the original trial record to be considered as part of this appeal. This allows us to consider the issue raised on appeal instead of requiring Hannan to file a new postconviction relief action based on ineffective assistance of postconviction relief counsel for failure to raise the issue in the original postconviction relief proceeding.

The State claims section 814.7 does not apply because of our rule that "statutes controlling appeals are those that were in effect at the time the judgment or order appealed from was rendered," and the criminal judgment against Hannan which he is ultimately appealing occurred long before the effective date of the statute. *Wal-Mart Stores, Inc. v. Caselman,* 657 N.W.2d 493, 498 (Iowa 2003) (quoting *Ontjes v. McNider,* 224 Iowa 115, 118, 275 N.W. 328, 330 (1937)). Hannan argues the statute applies because the PCR judgment (that he is now appealing) took place months after the effective date of the statute.

We are not convinced, however, the rule the State relies upon is even applicable to section 814.7. Section 814.7 is not a "statute[] controlling [an] appeal[]" so much as it is a statute describing the procedure to bring a claim of ineffective assistance of counsel. Thus, we are not required to determine what "time the judgment or order appealed from was rendered" because we do not believe this rule applies to section 814.7.[2]

Instead, we are convinced a different rule applies to section 814.7 that makes the statute applicable in this case. While most statutes are presumed to be prospective in application, remedial or procedural statutes may be applied retroactively. *See* Iowa Code § 4.5; *Schuler v. Rodberg,* 516 N.W.2d 902, 904 (Iowa 1994) (recognizing "that remedial and procedural statutes are exceptions to the general rule and may be applied retroactively"). Section 814.7 governs the methods by which a defendant

---

[2]Moreover, even if we had to, we think Hannan has the better argument. Our only concern is whether Hannan preserved error in this PCR proceeding, not whether he preserved error on direct appeal. Thus, if section 814.7 is a statute controlling an appeal as the State suggests it is, then as applied to this action it can only be a statute controlling Hannan's instant appeal—that is, Hannan's appeal from the PCR court's decision. The PCR court's judgment was entered after the effective date of the statute, and therefore even under the State's position Hannan is able to bring his claim. At the time Hannan appealed the PCR court's decision section 814.7 was in effect and allowed Hannan to bring his claim of ineffective assistance of counsel without raising it on direct appeal.

may assert a claim of ineffective assistance of counsel. *See* Iowa Code § 814.7. As such, it "prescribes a method of enforcing rights or obtaining redress for their invasion." *Dolezal v. Bockes*, 602 N.W.2d 348, 351 (Iowa 1999). Moreover, section 814.7 does not affect the substantive rights of parties, but rather "governs the practice, method, procedure, or legal machinery by which the substantive law is enforced or made effective." *Bd. of Trs. v. City of W. Des Moines*, 587 N.W.2d 227, 231 (Iowa 1998). This indicates section 814.7 is procedural and may be applied retroactively.

Ultimately, however, we look to legislative intent to determine whether a statute applies retroactively or prospectively. *Id.* This can be determined by employing a three-part test. *See id.* Such a test requires that we look at the language of the statute, the evil to be remedied, and whether there was an existing statute that governed the evil to be remedied. *Id.*

There is nothing in the language of section 814.7 to indicate the legislature wanted the statute to apply retroactively. Nevertheless, the second and third factors indicate it should apply retroactively. Section 814.7 remedies the evil that occurs when litigants must raise ineffective assistance of counsel claims without an adequate record. Thus, the statute attempts to conserve judicial resources and place the defendant's claim in the court that is most informed to handle it. *See Straw*, 709 N.W.2d at 133. There was no previous statute that adequately dealt with this concern. *See* Iowa Code chapter 822. As a result, we think the legislature's attempt to fix a procedural wrong evinces an intent to make the statute retroactive. *See Bd. of Trs.*, 587 N.W.2d at 531–32. Accordingly, Hannan's claim is properly before us under section 814.7.

**V. Discussion.**

To prevail on his ineffective-assistance-of-counsel claims Hannan must prove by a preponderance of the evidence that his counsel failed to

perform an essential duty and that such failure prejudiced him. *See, e.g.,* *Lane*, 726 N.W.2d at 393. First we must decide if there was a constitutional violation as Hannan alleges. *See, e.g., State v. Ceron*, 573 N.W.2d 587, 590–92 (Iowa 1997) (first determining whether the defendant's basis for ineffective assistance of counsel had merit, and determining that because it did not, counsel did not breach an essential duty). Hannan has alleged his constitutional right to counsel was violated under article I, section 10 of the Iowa Constitution and the Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment.[3] *See Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) (applying the Sixth Amendment right to counsel upon the states through the Fourteenth Amendment). If a constitutional violation occurred then we can proceed to determine whether counsel failed to perform an essential duty by not vindicating those rights and whether prejudice resulted.

A defendant's constitutional right to counsel is effective until waived. *State v. Rater*, 568 N.W.2d 655, 658 (Iowa 1997). Unless Hannan properly waived his right to counsel, Hannan still had his constitutionally protected right to counsel "[a]t all critical stages of the criminal process." *Majeres*, 722 N.W.2d at 182. Because Hannan's stand-by counsel at trial is not equivalent to representation and does not cure an improper waiver, Hannan's right to counsel was violated unless he properly waived it. *Rater*, 568 N.W.2d at 661 ("[T]he appointment of stand-by counsel is insufficient to satisfy the Sixth Amendment right to counsel when the court has failed to

---

[3]Hannan has not alleged any reason for treating the right to counsel under our state and federal constitutions differently, and thus we address the merits of Hannan's constitutional argument without differentiating between the two. *See State v. Majeres*, 722 N.W.2d 179, 182 (Iowa 2006) (addressing questions concerning our state and federal constitution's right to counsel under a federal analysis).

conduct an inquiry to ensure the defendant's waiver of that right was knowing and intelligent."). Therefore, the question we must decide is whether Hannan properly waived his right to counsel.[4]

A proper waiver must be voluntary, knowing, and intelligent. *Stephenson*, 608 N.W.2d at 782 ("[B]efore a trial court honors an accused's request to waive the right to counsel, it must satisfy itself the defendant's election is voluntary, knowing, and intelligent."); *Rater*, 568 N.W.2d at 658 ("Before a trial court accepts the request, the court must make the defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" (quoting *Adams v. United States*, 317 U.S. 269, 279, 63 S. Ct. 236, 242, 87 L. Ed. 268, 275 (1942))). In order for the defendant to properly waive his right to counsel we have required courts "to engage the accused in a colloquy sufficient to apprise a defendant of the dangers and disadvantages inherent in self-representation." *Stephenson*, 608 N.W.2d at 782; *see State v. Cooley*, 608 N.W.2d 9, 15 (Iowa 2000) ("A searching or formal inquiry is among the procedures required before an accused's waiver of counsel may be accepted."). Moreover, it is up to the

---

[4]Whether Hannan properly invoked his right to self-representation is not before us, although its analysis closely parallels that of whether Hannan properly waived his right to counsel. *See Spencer v. Ault*, 941 F. Supp. 832, 851 (N.D. Iowa 1996) (calling the right to self-representation a "sister right" under the Sixth Amendment). Determining whether a defendant invoked his or her right to self-representation necessarily requires a determination of whether the defendant waived his or her right to counsel, but it also requires additional determinations not present in a waiver-of-counsel inquiry. *Compare Spencer*, 941 F. Supp. at 834 (determining whether defendant invoked his right to self-representation by analyzing whether defendant "clearly and unequivocally asserted his [or her] right to self-representation" (which includes an analysis of whether the defendant knowingly, voluntarily, and intelligently waived his or her right to counsel), and whether the court "appointed only standby counsel to assist the [defendant] with his [or her] defense," and "whether the [defendant] then waived his [or her] right to self-representation by acquiescing in the actions of his standby counsel"), *with State v. Stephenson*, 608 N.W.2d 778, 782 (Iowa 2000) (determining whether the defendant waived his right to counsel by deciding whether "the defendant's election [wa]s voluntary, knowing, and intelligent").

State to prove that a valid waiver exists. *Rater,* 568 N.W.2d at 660 ("The State has the burden to prove the waiver was valid.").

The surrounding circumstances will determine the sufficiency of a colloquy. *See Stephenson,* 608 N.W.2d at 782 ("The degree of inquiry necessary to assure a valid waiver varies with the nature of the offense and the ability of the accused to understand the process."); *Cooley,* 608 N.W.2d at 15 (noting " 'a judge must investigate as long and as thoroughly as the circumstances of the case before him demand' " (citation omitted)). However, a " 'mere routine inquiry' " is insufficient, and a " 'penetrating and comprehensive examination' " is necessary. *Cooley,* 608 N.W.2d at 15 (citation omitted). A sufficient colloquy will necessarily look into

> "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter."

*Id.* (quoting *Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S. Ct. 316, 323, 92 L. Ed. 309, 321 (1948)). In addition, the defendant must be "admonished as to the usefulness of an attorney at that particular proceeding, and made cognizant of the danger in continuing without counsel." *Id.* In previous cases we have even suggested that district court judges use the model inquiries found in our state and federal bench books to obtain a proper waiver of counsel. *See State v. Martin,* 608 N.W.2d 445, 450 (Iowa 2000) (recommending the model inquiry found in *Iowa Bench Book,* 5-37 to 5-41 (1999)); *State v. Spencer,* 519 N.W.2d 357, 360 n.1 (Iowa 1994) (recommending the model inquiry found in 1 *Bench Book for United States District Judges* 1.02-2 (3d ed. 1986)); *see also Spencer,* 941 F. Supp. at 843–44 (discussing and quoting the *Bench Book for United States District Judges*).

In this case the trial court did not conduct the all important colloquy to make sure Hannan properly waived his right to counsel. The State argues the judge's brief explanation of trial procedures and answers to Hannan's questions during the hearing on Faber's motion to withdraw were sufficient to comport with our constitutional requirements. We disagree. First, as Hannan correctly points out, these explanations and answers occurred after the judge essentially forced Hannan to represent himself. Second, even if there was a cognizable colloquy, it fell far short of discussing the necessary constitutional concerns. Nowhere did the court address the dangers of self-representation or make any kind of finding that his waiver was voluntary.

It is perhaps axiomatic to say that at all stages in these proceedings Hannan's counsel had an essential duty to protect his constitutional rights. While we presume his counsel acted competently and the representation fell "within the wide range of reasonable, professional assistance," under these facts Hannan met his burden to prove by a preponderance of the evidence that his counsel failed to perform an essential duty. *State v. Dible*, 538 N.W.2d 267, 272 (Iowa 1995). Our laws regarding a defendant's right to counsel were well established and recently emphasized at the time of the violation. *See Gideon*, 372 U.S. at 335, 83 S. Ct. at 792, 9 L. Ed. 2d at 799 (making the Sixth Amendment right to counsel binding upon the states); *Rater*, 568 N.W.2d at 658 (emphasizing the Sixth Amendment constitutional requirements months before Hannan's trial). Such circumstances should have instructed competent counsel to object to Hannan's deficient waiver and vindicate his rights. *Cf. State v. Hepperle*, 530 N.W.2d 735, 740 (Iowa 1995) (finding counsel did not fail to perform an essential duty when the law at the time was less than clear). Hannan's initial PCR application indicated his belief that the waiver was insufficient. Moreover, the waiver

was clearly defective. Counsel should have raised this argument for Hannan. Hannan has proved that his counsel failed to perform an essential duty.

Hannan has also met his burden of proving prejudice. Whether a defendant "was actually prejudiced by the court's failure to conduct a sufficient inquiry or by its decision to require him to proceed pro se is immaterial. Harmless error analysis is not applicable to Sixth Amendment right to self-representation questions." *Rater*, 568 N.W.2d at 661; *Cooley*, 608 N.W.2d at 18 ("The denial of an attorney during the critical stages of a trial can never be construed as harmless error."). Thus, when a violation of a defendant's right to counsel occurs, prejudice is presumed. *See McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8, 104 S. Ct. 944, 950 n.8, 79 L. Ed. 2d 122, 133 n.8 (1984) ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis.").

As a result, we hold Hannan's Sixth Amendment right to counsel was violated, and he has proven his claim of ineffective assistance of counsel. Therefore, Hannan must be given a new trial. *See Stephenson*, 608 N.W.2d at 783 ("[T]he failure of the trial court to conduct an adequate inquiry . . . results in reversible error.").

**VI. Conclusion.**

District court judges are often called upon to navigate the "thin line" presented in cases such as this, where they must refrain from "improperly allowing the defendant to proceed *pro se,* thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation." *Fields v. Murray*, 49 F.3d 1024, 1029 (4th Cir. 1994); *see Spencer*, 941 F. Supp. at 834, 840 n.7, 844

n.9 (discussing this predicament). We are sympathetic to judges in this perilous position. *See Spencer*, 941 F. Supp. at 844 n.9. We emphasize, however, that a motion for substitute counsel should not be granted without cause and that proper rulings on such motions can help to avoid violations of constitutional rights. *See Martin*, 608 N.W.2d at 449 ("A defendant must show sufficient cause to justify the appointment of substitute counsel. Sufficient cause includes 'a conflict of interest, irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant.' In addition, the court must balance 'the defendant's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice.'" (Citations omitted.)). But we also recognize the proper granting or denying of such a motion may inevitably lead to the same result: the defendant proceeding pro se. *Compare Martin*, 608 N.W.2d at 448 (trial court rejected defendant's request for substitute counsel and continuance and defendant proceeded pro se with stand-by counsel), *with Rater*, 568 N.W.2d at 656–57 (trial court granted four substitutions of counsel and multiple continuances and defendant proceeded pro se with stand-by counsel).

Thus, in the end, the trial court must ensure a defendant has made a voluntary, knowing, and intelligent waiver of his right to counsel before he or she proceeds pro se, even if the court appoints stand-by counsel. This should always be done with a comprehensive colloquy between the court and the defendant. As we have said before, it is an "absolute duty" upon the trial court. *See Stephenson*, 608 N.W.2d at 782.

We conclude Hannan's Sixth Amendment rights were violated. His counsel's failure to vindicate those rights resulted in ineffective assistance of counsel. Hannan must be given a new trial. We recognize our decision continues the already long and laborious proceedings in this case. The

result also postpones the finality expected by the State and the public. Constitutional violations, however, are not subject to these concerns. We vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for new trial.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED.**